WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Huminski,<br><br>    Plaintiff,<br><br>v.<br><br>Hector Heretia, et al.,<br><br>    Defendants. | No. CV11-0896 PHX DGC<br><br>**ORDER** |

  Defendants have filed a motion for summary judgment. Doc. 95. *Pro se* Plaintiff Scott Huminski has filed a response to the motion (Docs. 118-120), and Defendants have filed a reply (Doc. 140).[1] Mr. Huminski also has filed several motions for partial summary judgment (Docs. 113, 117, 125), and Defendants have responded (Doc. 140). For reasons that follow, the Court will grant summary judgment for Defendants and against Mr. Huminski.[2]

---

[1] Mr. Huminski is *pro se*, but he is no stranger to civil litigation. He was the plaintiff in *Huminski v. Corsones*, 396 F.3d 53 (2nd Cir. 2005) (characterizing Plaintiff as "a long-time critic of the Vermont justice system"), and has appeared *pro se* in at least three other cases in this Court. *See Huminski v. Maricopa County, et al.*, CV 11-2352-JAT; *Midland Funding LLC v. Huminski, et al.*, CV 12-868-DGC; *United States v. Maricopa County, et al.*, CV 12-981-ROS. A Westlaw search for "Scott Huminski" produces more than a dozen other reported decisions from Vermont and the Second Circuit where Plaintiff appears to have been a party, appearing either *pro se* or through counsel.

[2] Defendants' request for oral argument is denied because the issues in this case have been fully briefed and oral argument will not aid the Court's decision. Fed. R. Civ. P. 78(b). Although Mr. Huminski originally requested oral argument on some of his motions (Docs. 113, 117), he subsequently informed the Court that he did not want oral argument (Doc. 133).

**I.    Background.**

On April 13, 2011, Defendant Hector Heredia, an officer with the City of Surprise Police Department, sent an email to Mr. Huminski informing him that Justin Nelson had filed a harassment complaint against him. The email read as follows:

> This is Officer H. Heredia #2019 from the Surprise Police Department. I would like to inform you that Mr. Michael [sic] Nelson filed a harassment complaint with this department today. Mr. Huminski I would like to set up an interview with you reference this harassment allegation. My scheduled work days are Wednesday through Saturday 6:00 A.M. to 4:00 P.M. Please do not have any type of contact with either Michael [sic] Nelson or Anthony Tsontakislaw until I speak with you and hear your side. You can call me at 623-222-4262 to set up an interview or leave a message when you will be able to come during the mentioned work days and hours.
>
> Thank-you.

Doc. 95-1 at 5.

After receiving the email, Mr. Huminski called the Surprise Police Department and left the following voice message for Officer Heredia:

> This is Mr. Huminski calling. I don't even know if – who's contacting me, somebody says they are, but according to your hours that you work, it must not have been you because the e-mail came when you weren't working. So – but in either case – interfering [with] civil litigation between me and Nelson and Tsontakis Law, that's Nelson's attorney – we're in prelitigation phase.
>
> I represent myself. I have the right to contact opposing counsel regarding a civil matter pending to be filed or filed. Your conduct constitutes obstruction of justice, plain and simple. End this conduct immediately. I expect to hear – get an e-mail today at 5 o'clock. If not, I'll have to pursue criminal charges against you. Thank you.

Doc. 119 at 3.

At 3:29 p.m. the same day, Officer Heredia reached Mr. Huminski by telephone. A transcript of the phone conversation has been submitted with the summary judgment briefing. Doc. 95-1 at 10-28. The Court will not recount the conversation in detail here,

but notes that Mr. Huminski accused Officer Heredia of obstructing justice and committing crimes by sending the email. Officer Heredia tried to convince Mr. Huminski to come into the police department to discuss the harassment allegation, but Mr. Huminski refused.

The next day, Mr. Huminski filed a complaint in Highland Justice Court in Maricopa County, Arizona. Doc. 1 at 5. Although the Court's copy of the complaint is not clear (Doc. 1 at 6), the parties agree that Mr. Huminski asserted that Officer Heredia's email was an unlawful police order that violated Mr. Huminski's constitutional rights. Defendants removed the action to this Court because it claimed violation of the First and Fourteenth Amendments and therefore raised federal questions subject to this Court's jurisdiction under 28 U.S.C. § 1331. Mr. Huminski did not contest the removal.

Mr. Huminski filed 11 separate motions in the first two months of litigation in this Court. *See* Docs. 6, 8, 10, 12, 16, 21, 23, 24, 32, 33, 40. These included two motions for temporary restraining orders, a motion for a preliminary injunction, a motion for partial summary judgment, and a motion for sanctions against Defendants. The Court disposed of these motions in an order dated July 18, 2011. Doc. 42. Mr. Huminski appealed. Doc. 43. Mr. Huminski filed five additional motions in the next few months. *See* Docs. 50, 51, 55, 61, 62. These included another motion for a preliminary injunction, which the Court denied on October 18, 2011. Doc. 68. Mr. Huminski appealed again. Doc. 69. Mr. Huminski filed five more motions in the next two months, including another motion for partial summary judgment. *See* Docs. 70, 75, 76, 82, 87. On December 16, 2011, the Court ruled on these motions. Mr. Huminski filed six more motions in the next four weeks (*see* Docs. 90, 92, 100, 101, 103, 105), and Defendants filed a motion for summary judgment (Doc. 95).

The Court held an on-the-record telephone conference with Mr. Huminski and counsel for Defendants on January 18, 2012, to address a number of these motions. The litigation up to that point had made clear that the central issue in this case was the meaning and effect of Officer Heredia's April 13, 2011 email. Mr. Huminski claimed

that the email was an official police order that infringed his constitutional rights; Defendants claimed that the order was simply a request that Mr. Huminski not have contact with Nelson and his lawyer while the harassment complaint was investigated.

One month before the conference call, Mr. Huminski had filed a document titled "Conditional Stipulation to Dismissal." Doc. 88. The document referred to the Court's order denying Mr. Huminski's request for a preliminary injunction and stated that if the Court viewed the plain language of Officer Heredia's email as "a suggestion for voluntary cooperation and not a police order," then "continuing this litigation is frivolous and the matter should be dismissed." *Id.* The Court did not dismiss the case in response to this document because the Court's order denying the preliminary injunction addressed only the probability of success on the merits and did not constitute a final determination of the email's meaning. The Court explained this fact to Mr. Huminski in an order and again during the January 18 conference call. Doc. 89. But the "Conditional Stipulation" did suggest that the case might most efficiently be resolved if the Court addressed the meaning of the email in cross-motions for summary judgment.

As a result, the Court asked during the conference call if an immediate ruling on the meaning of the email might be helpful. In response, Mr. Huminski said "Yes, that would be extremely helpful and probably such a statement would dispose of the case entirely, you know, one way or the other." Court's Livenote Rough Transcript, 1-18-12. The Court accordingly made this proposal to Mr. Huminski:

> [I]f it's your intent to get a final ruling out of me on the question of whether this e-mail is mandatory or not, does it make sense, rather than striking [Defendants'] motion for summary judgment and carrying on this litigation for several more months, to have you respond to the motion for summary judgment, and if you choose, file a cross-motion for summary judgment asking me to rule in your favor, get that briefing done, let me rule? If it disposes of the case, we are done with this case and the unsuccessful party can appeal if they choose. If it doesn't dispose of the case, which summary judgment rulings sometimes don't, then we could all confer about where the case should go and what else has to be done in it.

*Id.* Mr. Huminski agreed, but noted that he already had briefed the issue in an earlier

- 4 -

summary judgment motion. The Court asked whether he had that briefing on his computer, which he did, and then suggested it would be relatively simple for him to reproduce the briefing as a response to Defendants' current motion and in support of his own motion. Mr. Huminski responded: "That's reasonable, sir." *Id.* Defense counsel also agreed to focus on the summary judgment motions.

Both sides agreed during the conference call that further discovery was not needed for the Court to address the plain meaning of the email, with Mr. Huminski stating that how "a reasonable person . . . would interpret the plain language of the police order is fairly obvious and really doesn't need any discovery. We just need an opinion from the court." *Id.* The Court accordingly worked out a briefing schedule with the parties and entered an order setting the schedule. Doc. 108. The order also provided that discovery would be suspended until the Court ruled on the summary judgment motions. *Id.*

Despite this agreement to focus for the time being on summary judgment, Mr. Huminski filed four more motions in the next four days. *See* Docs. 109, 110, 111, 112. Among other things, Mr. Huminski sought to initiate a criminal investigation of Defendants' expert witness and to add the State of Arizona and Arizona Attorney General to this litigation. As a result, the Court held another telephone conference with the parties on January 25, 2011, during which the Court explained that Mr. Huminski did not need a criminal investigation of the expert – he could ask the Court to disregard the expert's opinions as part of the summary judgment briefing. The Court concluded that pursuing the agreed-upon course of briefing cross-motions for summary judgment was still the most efficient way to see if this case could be resolved. Doc. 115.

In the following four weeks, Mr. Huminski filed another seven motions, including three motions for partial summary judgment. *See* Docs. 113, 117, 121, 122, 124, 125, 130. The Court ruled on some of these motions and, because Mr. Huminski's practice of filing frequent motions was defeating the Court's objective of resolving this case efficiently, directed that "Plaintiff shall refrain from filing any additional motions in this case until the briefing and ruling scheduled in Docs. 108 and 128 have been completed."

Doc. 131. Undeterred, Mr. Huminski proceeded to file another eight motions. *See* Docs. 132, 134, 136, 137, 141, 143, 145, 146.

Consistent with its original intention to resolve this case efficiently by focusing on the central question presented by Mr. Huminski's complaint, the Court will address the cross-motions for summary judgment. Because the Court will grant Defendants' motion for summary judgment, all other pending motions will be denied.

**II.     Summary Judgment Standard.**

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Analysis.**

As already noted, Mr. Huminski's complaint is premised entirely on the claim that Officer Heredia's email constituted a police order that restrained his conduct and violated his constitutional rights. Mr. Huminski agrees in the summary judgment briefing that he seeks only $1.00 in nominal damages. Doc. 120 at 2. The Court concludes, on the basis of undisputed facts, that Officer Heredia did not issue an order to Mr. Huminski.

**A.      Undisputed Facts.**

The key sentence in Officer Heredia's email reads: "Please do not have any type

of contact with either Michael [sic] Nelson or Anthony Tsontakislaw until I speak with you and hear your side." Doc. 95-1 at 5.  Upon receiving this email, Mr. Huminski left a voicemail for Officer Heredia asserting that the officer's "conduct constitutes obstruction of justice, plain and simple." Doc. 119.  At 3:29 p.m. on the day the email was sent, Officer Heredia reached Mr. Huminski by telephone.[3]  The opening exchange set the tone for the conversation:

> MR. HUMINSKI:  Hello?
>
> OFFICER HERETIA:  Hello, is this Mr. Huminski?
>
> MR. HUMINSKI:  Oh, yes, it is. Is this the guy who threatened me?
>
> OFFICER HERETIA:  This is Officer Heretia from the Surprise Police Department.
>
> MR. HUMINSKI:  Right –
>
> OFFICER HERETIA;  Okay –
>
> MR. HUMINSKI:  You understand you're engaging in obstruction of justice –
>
> OFFICER HERETIA:  Well, sir –
>
> MR. HUMINSKI:  – Do you know you're engaging in the cover up of tax evasion?

Doc. 95-1 at 11.  Mr. Huminski proceeded to say: "I'm willing to file a complaint against you for criminal violation of state and federal law," and then: "I'm filing a complaint against you." *Id.* at 12.

The balance of the conversation consisted of Officer Heredia trying to convince Mr. Huminski to come to the police department to be interviewed regarding Nelson's harassment complaint.  Huminski refused.

---

[3] The transcript provided to the Court, and the caption of this case, spell the officer's name as "Heretia." In briefing, Defendants refer to the officer as "Heredia," the name used by the Court in this order.

1    Officer Heredia made the following statement regarding the email he had sent
2  earlier in the day: "Ok, Mr. Huminski, last thing I'm going to tell you is I can only ask
3  you not to contact either of those two subjects that we talked about. I can't make you[.]"
4  *Id.* at 22. Officer Heredia repeated: "I can only ask but I can't make you[.]" *Id.*
5  Moments later, Officer Heredia said again: "I can only ask you not to contact . . . ." *Id.*
6  at 23. This statement was interrupted by Mr. Huminski. Once more, Officer Heredia
7  said: "I can only ask you not to contact these two people, ok? Whether you do or not is
8  entirely up to you[.]" *Id.*

9    Mr. Huminski says that Officer Heredia suggested that any actions contrary to the
10  email would give rise to criminal liability for Mr. Huminski. In support of this position,
11  Mr. Huminski cites the following exchange from the telephone conversation:

> OFFICER HUMINSKI: OK. I can only ask you not to contact these
> two people, ok? Whether you do or not is entirely up to you –
>
> MR. HUMINSKI: And that's a crime.
>
> OFFICER HEREDIA: Yes. And if you do continue, you may be –
> you may be looking into a harassment charge being filed against
> you, and it could go criminal.
>
> MR. HUMINSKI: Well, guess what? Guess what? You might be
> looking to obstruct some justice –
>
> OFFICER HEREDIA: OK.
>
> MR. HUMINSKI:  -- and conspiracy to violate the tax laws of
> Arizona and the United States.

*Id.* at 23-24. This reference by Officer Heredia to possible charges against Mr. Huminski
clearly referred to charges of harassment for Huminski's actions toward Nelson and
Nelson's attorney. Officer Heredia was not suggesting that Mr. Huminski would be
subject to criminal charges for acting contrary to the officer's email. Rather, Officer
Heredia repeatedly made clear that he was asking Mr. Huminski not to contact Nelson
and his attorney, but he could not command Mr. Huminski.

1  Mr. Huminski's statement of facts does not dispute the contents of this recorded
2  conversation. *Compare* Doc. 95-1 at 1-2 with Doc. 120 at 1.

3  A few days later, on April 19, 2011, Lieutenant John Bacon of the City of Surprise
4  Police Department contacted Mr. Huminski by telephone. Lieutenant Bacon informed
5  Mr. Huminski that at no time had he been ordered to abstain from contacting the subjects
6  involved in the harassment complaint. Doc. 95-1 at 32. He also informed Mr. Huminski
7  that Officer Heredia's email of April 13, 2011 was a mere request, and in no way did the
8  email restrict Mr. Huminski from attending any civil or criminal court proceedings, a
9  concern apparently raised by Mr. Huminski. *Id*. Mr. Huminski admits these
10 communications by Lieutenant Bacon. Doc. 120 ¶ 4 (admitting Doc. 95-1 at 2, ¶ 4.)

11 **B.  Analysis.**

12 The Court concludes, as a matter of undisputed fact, that Officer Heredia did not
13 issue an order to Mr. Huminski. Officer Heredia asked Mr. Huminski not to contact Mr.
14 Nelson or his attorney before the officer could interview Huminski. Mr. Huminski has
15 provided no authority for the proposition that a mere request rises to the level of a
16 constitutional violation. As Heredia himself made clear in the phone conversation,
17 whether or not Mr. Huminski contacted Nelson and his attorney was entirely up to Mr.
18 Huminski. Doc. 95-1 at 23.

19 Because the entire premise of Mr. Huminski's complaint in this case is that Officer
20 Heredia and the police department issued a direct order in violation of his constitutional
21 rights, and that premise clearly is not correct, the Court will grant summary judgment in
22 favor of Defendant. Mr. Huminski has presented no evidence to suggest that there is a
23 question of fact to be decided by a jury.

24 Mr. Huminski does assert – contrary to his statements in the January 18, 2012
25 telephone conference with the Court – that additional discovery is needed concerning
26 Defendants' expert witness and the motives of various Defendants. Doc. 118 at 1-2. The

Court's decision, however, does not in any respect rely on Defendants' expert witness.[4] Nor does Mr. Huminski explain how discovery concerning Defendants' motives could somehow contradict the plain meaning of Officer Heredia's email and same-day telephone conversation with Mr. Huminski.  The Court concludes that additional discovery is not needed for the Court to rule on the meaning of Officer Heredia's communications with Mr. Huminski.

Mr. Huminski asserts in his motion for partial summary judgment that A.R.S. § 13-2921 is unconstitutionally vague and overbroad.  This statute concerns harassment, and apparently is the statute under which Mr. Huminski might have been charged with harassing Nelson and his attorney.  The meaning of the statute, however, is not at issue in this case.  Mr. Huminski's complaint is based on the email from Officer Heredia, not A.R.S. § 13-2921.  As a result, Mr. Huminski's arguments regarding the constitutionality of the statute have no bearing on the Court's ruling on Defendants' motion for summary judgment.

Another of Mr. Huminski's motions for summary judgment argues that Mr. Huminski brought a Mesa Municipal Court action against Justin Nelson and informed Defendants of this fact.  Mr. Huminski then argues:  "At no time did defendants withdraw, rescind or narrowly tailor the police email and obviously defendants cannot alter A.R.S. § 13-2921." *Id*. at 114.  The fact that Mr. Huminski was suing Mr. Nelson in municipal court has no bearing on the issue to be decided by this Court.  For reasons stated above, Defendants never issued a command to Mr. Huminski.

In yet another motion for partial summary judgment, Mr. Huminski asks the Court to grant judgment in his favor "concerning the conduct of the defendants on April 13, 2011 for the time period beginning with Defendants' first email contact with Huminski and ending one minute prior to Defendants' phone conversation with Huminski on April 13, 2011." Doc. 117.  Mr. Huminski appears to suggest that the email constituted a

---

[4] For this reason, the Court need not rule on Plaintiff's motion to exclude Defendant's expert witness.  Doc. 111.

binding command until Officer Heredia clarified the email during the telephone conversation. The Court does not agree. Officer Heredia's email said "[p]lease do not have any type of contact" with Nelson or his attorney "until I speak with you and hear your side." Doc. 95-1 at 5. The fact that the sentence begins with the word "please" shows that it is a request, not a command. The Court cannot conclude that Mr. Huminski was subject to an unconstitutional command until Officer Heredia clarified the email.

In his final motion for partial summary judgment, Mr. Huminski again makes various arguments regarding A.R.S. § 13-2921. Doc. 125. As explained above, this statute has no bearing on the meaning of Officer Heredia's email.

In summary, Defendants never subjected Mr. Huminski to an order or command that violated his constitutional rights. Summary judgment will therefore be entered in favor of Defendants.

**IV.  Caution.**

Mr. Huminski has engaged in abusive litigation practices in this case. He has filed some 42 separate motions, including eight motions after the Court directed him to refrain from filing further motions until the summary judgment issue was decided. Mr. Huminski also disregarded the Court's order that no party file more than one motion for summary judgment (Doc. 58, ¶ 7(b)), filing at least five such motions (*see* Docs. 21, 75, 113, 117, 125). *Pro se* or not, such litigation tactics cannot be tolerated. *See King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1986) ("*Pro se* litigants must follow the same rules of procedure that govern other litigants."); *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir.1986) (*pro se* litigants "should not be treated more favorably than parties with attorneys of record"); *Carter v. Comm'r of Internal Revenue,* 784 F.2d 1006, 1008 (9th Cir.1986) ("Although *pro se*, [plaintiff] is expected to abide by the rules of the court in which he litigates ."). Mr. Huminski is cautioned that abusive litigation tactics and disregard of the Court's orders in other cases may well result in serious sanctions.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 95) is **granted**.

2. All other pending motions in this case are **denied**.

3. The Clerk shall terminate this action.

Dated this 29th day of May, 2012.

*David G. Campbell*
United States District Judge